# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| Stacey Castle, individually and on behalf of all others similarly situated, | 2:21-cv-01171 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| The Kroger Co., | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1. The Kroger Co. ("defendant") manufactures, labels, markets, and sells slices of Gouda cheese purporting to get its smoked attributes – including taste and color – entirely from being smoked, under its Private Selection brand ("Product").

 

**I. SMOKING PROCESS**

2. Smoking is a processing method to preserve or improve the flavor of food by exposing it to smoke, usually from burning wood.

3. The drying action of the smoke and the different phenol compounds help to preserve protein-rich foods such as meat, cheese, almonds, and fish.

4. The origins of smoking date to prehistory, as nomadic peoples experimented with fire and primitive cheese products.

5. The earliest record of smoked cheese comes from ancient Rome, when an owner of a cheese shop was forced to share space in the *macellum* with a baker.[1]

6. The baker's wood burning fire imparted a distinct flavor to the cheese, which varied based on the type of wood that was used.

7. For example, wood chips from deciduous hardwood trees of the genus *Carya* – provide hearty and sweet flavors to cheese and meat ("hickory").

8. Pecan wood, a type of hickory, gives cheese a spicy and nutty taste.

9. Oak provides smoked flavors of moderate intensity.

10. During the second half of the 20th century, the popularity of smoking decreased due to the prevalence of "smoke flavor," which is smoke condensed into a liquid form.[2]

11. While "smoke flavor" may be convenient, it fails to supply the rich, layered combination of phenols and other odor-active compounds compared to where a food's taste is derived entirely from being smoked over wood.

12. In the past two decades, consumers have increasingly embraced smoked foods, as

---

[1] *Macellum* is the Italian name for the farmer's markets of ancient Roman that sold freshly made foods.
[2] Matthew Sedacca, Liquid Smoke: The History Behind a Divisive Culinary Shortcut – Barbecue's love/hate relationship with the manufactured flavor, Eater.com, Jun 15, 2016.

made without advanced chemistry and synthetic additives.

13. Cheese industry observers confirm that "smoked cheeses are on the rise," as "[P]eople are seeking bigger flavors, bolder flavors, deeper flavors."[3]

## II. ADDED SMOKE FLAVORING

14. "Smoke flavor" is "smoke condensed into a liquid form."[4]

15. The 400 flavor compounds which contribute to a "smoked taste" include pyrazines, aromatic hydrocarbons, alcohols, organic acids, esters, furans, phenols, carbonyl and non-carbonyl compounds, and various oxygen- and nitrogen-containing heterocyclic compounds.

16. Added smoke flavor cannot impart the same taste of real smoking for several reasons.

17. First, added smoke flavoring lacks the delicate balance of phenolic compounds, including 2,3-Butanedione, 2,3-Pentanedione, 3-Butanoic acid, 3-Methylbutanoic acid, 4-Ethylguaiacol, 4-Propylguaiacol and/or 4-Vinylguaiacol.

18. Second, the smoke generation process influences the wood-smoke chemical composition, generating compounds that are not capable of being included in a "natural smoke flavor," like trans-isceugenol and 4-methylsyringol.

19. When foods like Gouda cheese are exposed to volatiles and particulate matter found in smoke, they undergo chemical reactions which form new flavor compounds.

20. Third, certain compounds only serve as intermediates in the formation of more stable forms of compounds which are essential to the aroma of smoke.

21. Fourth, in most systems involving only smoke generation instead of smoking food,

---

[3] Kimberly L. Jackson, Smoked cheese: Growth stoked by demand for bolder flavors, Newark Star-Ledger, Dec 30, 2014, Updated Mar 29, 2019.
[4] Matthew Sedacca, Liquid Smoke: The History Behind a Divisive Culinary Shortcut – Barbecue's love/hate relationship with the manufactured flavor, Eater.com, Jun 15, 2016.

there is only a focus on volatile compounds which are believed to have distinctive odor properties at low concentrations.

22. This overlooks that nonvolatile compounds significantly contribute to smoke flavor.

23. By failing to disclose the addition of smoke flavor, consumers get the false impression the Product was made similarly to comparably labeled products and smoked over hardwood, when it was not.

### III. CONSUMERS VALUE FOODS WITHOUT ADDED FLAVORING

24. According to research by Mintel, consumers are increasingly seeking foods that get their taste only from a characterizing ingredient or a natural processing method.

25. Mintel reports that consumers are increasingly aware of the lack of transparency in the flavor industry, regularly highlighted by non-profits such as the Environmental Working Group ("EWG").[5]

26. The EWG often identifies foods with "natural" flavors, but which also contain "incidental" additives such as emulsifiers and solvents, that may pose health or nutritive risks.

27. The European Food Safety Authority ("EFSA") reported that many smoke flavorings added to foods contain compounds at levels which may pose a toxic risk when consumed.[6]

28. Innova Market Insights posited that "no added flavor" may be an emerging consumer trend.[7]

29. This trend is unique because it is not based on an affirmative statement or "claim," but by the absence of a front label statement which is required to inform consumers that a food's

---

[5] Lynn Dornblaser, Director, Innovation & Insight, Mintel, Clean Label: Why this trend is important now, 2017.
[6] Faizah Ahmed, Smoke-Flavored Foods May Be Toxic, Food Safety News, Feb. 16, 2010.
By on February 16, 2010
[7] Innova Market Insights, Flavors: Trends and Sustainability, Sept. 2018.

4

taste comes, at least in part, from something *added*.

### IV. STATE AND FEDERAL REGULATIONS REQUIRE ADDED SMOKED FLAVOR TO BE DISCLOSED ON FRONT LABEL TO CONSUMERS

30. Federal and identical state regulations require that a product's front label disclose the source of any characterizing or main flavor. *See* 21 C.F.R. § 101.22(i); ATCP 90.10 (1) ("food sold or distributed for sale in this state shall be labeled in compliance with applicable rules adopted by the United States food and drug administration under 21 CFR 101, 102, 104, 105, and 130.").

31. According to one commentator, these rules are "premised on the simple notion that consumers value 'the real thing' versus a close substitute and should be able to rely on the label to readily distinguish between the two. This consumer protection objective is relevant to taste claims conveyed in advertising as well."[8]

32. Hon. H. C. Adams, the Wisconsin Dairy and Food Commissioner before being elected to what was then Wisconsin's Second Congressional District, who was instrumental in stamping out deceptive labeling of dairy products, called out foods, like cheese, "that smoke never touched and which obtained their color and flavor from a poisonous solution called 'liquid smoke.'"

33. When the FDA enacted the regulations for flavoring, they followed Adams' guidance, and considered it misleading to describe cheese as "smoked" when "true smoke is absorbed in a liquid or other medium, and that medium is added to a food to provide a smoke flavor." 38 Fed. Reg. 20721.

34. In this circumstance, the front label should state, "with added smoke flavor," "[with] natural smoke flavor" or "flavor added."

---

[8] Steven Steinborn, Hogan & Hartson LLP, Regulations: Making Taste Claims, PreparedFoods.com, August 11, 2006.

35. When flavor is added to Gouda, a standardized cheese, the name is required to include "a declaration of any flavor and/or spice that characterizes the food, in the manner prescribed in § 101.22 of this chapter." 21 C.F.R. § 133.193(b) ("Spiced, flavored standardized cheeses."); 21 C.F.R. § 133.142 ("Gouda cheese").

36. The FDA has warned companies that fail to accurately inform consumers of foods which are not smoked and only have added smoke flavor:

> If these smoke ingredients [natural smoke flavor] are added flavors, they should be declared in accordance with 21 CFR 101.22 [on the front of the label]; however, if these ingredients describe the smoking process, then they must not be listed as ingredients in the ingredient statement.[9]

37. In 2014, the FDA cited a company selling cheese labeled similarly to Defendant's, which purported to be smoked, stating:

> Your…Smoked Cheddar Pasteurized Process Cheddar Cheese Food [products] [is] misbranded within the meaning of 403(a)(1) of the Act [21 U.S.C. § 343(a)(1)] in that the product labels are false and misleading" because the "labels declare 'smoked' as a part of the statement of identity; however, according to the establishment inspection report the products do not go through a smoking process but rather have liquid smoke applied to the surface of the cheese.[10]

38. The FDA concluded that the label "should not include the term 'smoked' in the statement of identity but 'with added smoke flavor,' 'smoke flavored,' or with 'natural smoke flavor.'"

## V. DEFENDANT'S LABELING IS MISLEADING

39. Defendant's representation of the Product as "Smoked Gouda" violates 21 U.S.C. § 343(a)(1) and ch. 97.03 ("Standards; misbranding."), which deem food misbranded when the label

---

[9] FDA, Warning Letter, Smoked Seafood, Inc. dba Little Mermaid Smokehouse, MARCS-CMS 515739, June 27, 2017.
[10] FDA, Warning Letter, Walnut Creek Kitchens, Inc., CIN-15-436857-08, Nov. 27, 2014.

contains a statement that is "false or misleading in any particular."

40. In evaluating whether a product's labeling is misleading, federal and state rules consider not only the statements made but also the extent to which the labeling fails to reveal material facts in light of such representations. Ch. 97.07 ("Interpretation.").

41. The statement, "Distinctive, Smoky Flavor," is misleading because it fails to reveal this flavor is from added smoke flavor instead of being smoked.

42. The statement, "Smoked Gouda," is misleading because the cheese is not smoked.

43. Whether a food has been smoked or contains liquid smoke, prepared by pyrolysis of hardwood sawdust, instead of being smoked over hardwoods, is basic front label information consumers rely on when making quick purchasing decisions at the grocery store.

44. Gouda cheese that gets its smoked taste from being smoked is not a rare or pricy delicacy that would make a reasonable consumer "double check" the absence of added smoke flavor by scouring the label.

45. Gouda cheese with a smoked taste only from smoking exists in the marketplace and is not technologically or otherwise unfeasible to produce.

7

46. These products (below), i.e., "Smoked Gouda" and "Hickory-Smoked Gouda Cheese Slices," are labeled identically to Defendant's Smoked Gouda, yet Defendant's is not smoked and has added smoke flavor, while these get their flavor entirely from being smoked over hardwoods.

 

47. The result is that consumers are misled by products that appear identical, even though they are not equal in quality.

48. Where Gouda cheese has a "smoked taste" (1) from *some* smoking but has a stronger smoke taste from added liquid smoke flavor or (2) has not been subject to any smoking, almost all companies – but not Defendant – truthfully represent this by a front label disclaimer, i.e., "with Natural Smoke Flavor." *See* 21 C.F.R. § 101.22(i).

Smokehouse Gouda
Gouda Natural Cheese
with **Natural Smoke Flavor**



49. Unlike the competitor product above, Defendant fails to disclose the addition of smoke flavor on the front label and relegates this information to its ingredient list, shown below.

**INGREDIENTS:** CULTURED PASTEURIZED MILK, SALT, ENZYMES, SMOKE FLAVOR, COLOR ADDED.

50. Consumers are misled because the absence of required, qualifying terms on the front

label, i.e., "natural smoke flavored Gouda," "smoke flavored Gouda," or "Gouda with natural [added] smoke flavor," gives them the false impression that all the Product's smoked attributes – including taste and color – are imparted by smoking, when none of these attributes are. *See* 21 C.F.R. § 101.22(i)(1)(i).

51. The added smoke flavor further misleads consumers by darkening the Product, giving the impression it was smoked longer than it was.

52. Even consumers who are distrustful enough of a nationally recognized brand like Kroger and "double check" the ingredients to see "smoke flavor" will not be told that the Product is not smoked.

53. By failing to disclose the addition of smoke flavor, consumers get the false impression the Product was made similarly to comparably labeled products and smoked over hardwood, when it was not.

## VI. CONCLUSION

54. Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives.

55. By labeling the Product in this manner, Defendant gained an advantage against other companies, and against consumers seeking to purchase products that were smoked.

56. The value of the Product that plaintiff purchased was materially less than its value as represented by defendant.

57. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

58. Had Plaintiff and proposed class members known the truth, they would not have

10

bought the Product or would have paid less for it.

59. The Product is sold for a price premium compared to other similar products, no less than approximately $3.99 per 10 slices (8 oz), a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

## Jurisdiction and Venue

60. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

61. The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

62. Plaintiff Stacey Castle is a citizen of Wisconsin.

63. Defendant The Kroger Co. is a Ohio corporation with a principal place of business in Cincinnati, Hamilton County, Ohio.

64. Plaintiff and defendant are citizens of different states.

65. Defendant transacts business within this district, through the marketing, supply, and sales of its products at numerous physical stores which it operates within this district.

66. Venue is in this district because plaintiff resides in this district and the actions giving rise to the claims occurred within this district.

67. Venue is in the Milwaukee Division because plaintiff resides in Waukesha County, which is where the events giving rise to the present claims occurred.

## Parties

68. Plaintiff Stacey Castle is a citizen of Waukesha, Waukesha County, Wisconsin.

69. Defendant The Kroger Co., is an Ohio corporation with a principal place of business in Cincinnati, Ohio, Hamilton County.

11

70. Defendant is the largest grocer in the United States.

71. Defendant operates various grocery store chains in Wisconsin and in the States which comprise the Consumer Fraud Multi-State Class, of Georgia, Kentucky, Michigan, Tennessee, and West Virginia.

72. The non-Kroger branded stores, including Metro Market and Pick 'n Save, are wholly-owned subsidiaries of Kroger.

73. All Kroger stores sell the premium, Private Selection brand, which is the Kroger private label for cheese.

74. The Private Selection brand is typically equivalent to, and usually exceeds, its national brand competitors in quality.

75. Plaintiff bought the Product on one or more occasions within the statute of limitations for each cause of action alleged, at Kroger-owned supermarkets including Metro Market, 12735 W Capitol Dr, Brookfield, WI 53005, between June and September 2021, among other times.

76. Plaintiff bought the Product because she expected it was subject to at least some smoking to provide its smoked taste, instead of only having added smoked flavor because that is what the front label said.

77. Plaintiff bought the Product at or exceeding the above-referenced price.

78. Plaintiff relied on the representations identified here – that "Smoked Gouda" on the front label referred to the cheese having been smoked over hardwoods.

79. Plaintiff relied on the statement, "Distinctive, Smoky Flavor" as describing the Product's taste due to being smoked over hardwoods.

80. Plaintiff had no reason to know the Product was not subject to any smoking.

81. Plaintiff wanted more than a "smokey" taste but a product that was smoked over

12

hardwood, so that its taste and color did not need so much, or any, added "smoke flavor."

82. Plaintiff would not have purchased the Product if she knew the representations were false and misleading.

83. Plaintiff chose between Defendant's Product and other similar products which were represented similarly, but which did not misrepresent their attributes and/or lower-priced products which did not make the statements and claims made by Defendant.

84. The Product was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

85. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's representations are consistent with its composition.

Class Allegations

86. Plaintiff seeks certification under Fed. R. Civ. P. 23(b)(2) and (b)(3) of the following classes:

> **Wisconsin Class:** All persons in the State of Wisconsin who purchased the Product during the statutes of limitations for each cause of action alleged.
>
> **Consumer Fraud Multi-State Class:** All persons in the States of Georgia, Kentucky, Michigan, Tennessee, and West Virginia, who purchased the Product during the statutes of limitations for each cause of action alleged.[11]

87. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

88. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

---

[11] The States in the Consumer Fraud Multi-State Class are limited to those States with similar consumer fraud laws under the facts of this case.

13

89. Plaintiff is an adequate representative because her interests do not conflict with other members.

90. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

91. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

92. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

93. Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Wisconsin Unfair Trade Practices Act ("UTPA"),</u>
<u>Wis. Stat. § 100.20</u>

(Consumer Protection Statute)

94. Plaintiff incorporates by reference all preceding paragraphs.

95. Plaintiff and class members desired to purchase a product that was subject to at least some smoking to provide its smoked taste, instead of only having added smoked flavor.

96. The representations on the Product constitute an advertisement to the public.

97. Wisconsin and federal regulations require that any food which has a primary recognizable flavor disclose the source of that flavor on the front label, so consumers can see it.

98. Violations of Chapter ATCP 90 are subject to the penalties and remedies of 100.20(5).[12]

99. In its order promulgating chapter ATCP[13] 90, DATCP's "Analysis" stated:

---

[12] Note, Chapter ATCP 90.
[13] Agriculture, Trade and Consumer Protection.

14

> Under [WIS. STAT. §] 97.09(1) ... federal rules related to food definitions and standards of identity, quality and fill of container are automatically enforceable under state law. In order to facilitate enforcement of other [federal Nutrition Labeling and Education Act] labeling rules under state law, this rule incorporates FDA and USDA rules by reference under [WIS. STAT. §] 97.09(4)

100. Wis. Stat. § 100.20(5) permits "[A]ny person suffering pecuniary loss because of a violation by any other person of any order issued under this section may sue for damages therefor in any court of competent jurisdiction."

101. Defendant violates § ATCP 90.02(1) because the Product's declaration of "Smoked Gouda" is not the Product's "common or usual name," "legally required name," or an "appropriate description that is readily understood by consumers," because it is not smoked.

102. Defendant violates Wis. Admin. Code § ATCP 90.02(3) because flavoring components added through smoking a cheese over hardwoods are not present in the Product in any amount, rendering the declaration of the Product's identity – "Smoked Gouda" – false, deceptive, and misleading.

103. Defendant violates Wis. Admin. Code § ATCP 90.10(1) because the Product is not labeled in compliance with the applicable FDA rules and regulations, based on violations of 21 C.F.R. §§ 101.22(i)(1)(i) and 133.193(b).

104. Plaintiff suffered a pecuniary loss due to Defendant's violation of Wis. Admin. Code §§ ATCP 90.02 and 90.10.

105. Plaintiff and class members desired to purchase a product with the attributes highlighted by the labeling – a smoked taste from being smoked over hardwoods and not from added smoke flavoring.

106. Defendant's false and deceptive representations and omissions are material in that

15

they are likely to influence consumer purchasing decisions.

107. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

108. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

109. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

110. Plaintiff relied on the representations and omissions.

111. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Violation of State Consumer Fraud Acts

### (On Behalf of the Consumer Fraud Multi-State Class)

112. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

113. Defendant intended that plaintiff and each of the other members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

114. As a result of defendant's use of artifice, unfair or deceptive acts or practices, plaintiff, and each of the other members of the Consumer Fraud Multi-State Class, have sustained damages in an amount to be proven at trial.

115. In addition, defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

## Breaches of Express Warranty, Implied Warranty of Merchantability and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

116. The Product was manufactured, identified, and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it was subject to at least some smoking to provide its smoked taste, instead of only having added smoked flavor.

117. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

118. This duty is based on Defendant's outsized role in the market for this type of product, as America's largest grocer, and the Private Selection brand being known for quality and integrity.

119. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers, and their employees.

120. Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices.

121. The Product did not conform to its affirmations of fact and promises due to defendant's actions and was not merchantable because it was not fit to pass in the trade as advertised.

122. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Negligent Misrepresentation

123. Defendant had a duty to truthfully represent the Product, which it breached.

124. This duty is based on defendant's position, holding itself out as having special knowledge and experience this area, as custodians of the Private Selection brand.

125. The representations took advantage of consumers' cognitive shortcuts made at the

point-of-sale and their trust in defendant, the leading grocer in the nation.

126. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

127. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Fraud

128. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it was subject to at least some smoking to provide its smoked taste, instead of only having added smoked flavor.

129. Defendant possesses specialized knowledge that the Product contained only added smoke flavoring, and was not smoked, yet sought to conceal or omit these facts, by failing to state on the front label a statement such as "Smoke Flavor Added" or "Not Smoked."

130. Moreover, the records Defendant is required to maintain provide it with actual and/or constructive knowledge of the falsity of the representations.

131. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

## Unjust Enrichment

132. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated: October 8, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com