UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

STACEY CASTLE,

                Plaintiff,

                                        Case No. 21-cv-1171-pp

    v.

THE KROGER CO.,

                Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS (DKT. NO. 12)

On October 8, 2021, the plaintiff filed a complaint individually and on behalf of all others similarly situated regarding representations about cheese products sold by the defendant's grocery chain. Dkt. No. 1. The plaintiff brought the following claims: (1) violation of Wis. Stat. §100.20; (2) violation of the consumer fraud act statutes of five other states (the class claim); (3) breaches of express warranty, implied warranty of merchantability and the Magnuson Moss Warranty Act, 15 U.S.C. §§2201, *et seq.*; (4) negligent misrepresentation; (5) fraud; and (6) unjust enrichment. Id. at 14–18.

The defendant has moved to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Dkt. No. 12. The court will grant in part and deny in part the motion.

## I.    Allegations in the Complaint

### A.    <u>Parties</u>

The plaintiff is a citizen of Wisconsin. Dkt. No. 1 at ¶68. The defendant is an Ohio corporation with a principal place of business in Cincinnati, Ohio. Id.

Case 2:21-cv-01171-PP  Filed 10/03/22  Page 1 of 51  Document 17

at ¶69. The plaintiff asserts that the defendant operates various grocery store chains throughout Georgia, Kentucky, Michigan, Tennessee, West Virginia and Wisconsin, including non-Kroger branded stores such as Metro Market and Pick 'n Save (which the plaintiff alleges are wholly-owned subsidiaries of the defendant), all of which sell the Private Selection brand. Id. at ¶¶71–73. She says that the Private Selection brand "is typically equivalent to, and usually exceeds, its national brand competitors in quality." Id. at ¶74. The plaintiff alleges that the defendant manufactures, labels, markets and sells under its Private Selection brand "slices of Gouda cheese purporting to get its smoked attributes—including taste and color—entirely from being smoked." Id. at ¶1.

The plaintiff alleges that on one or more occasions, she bought the sliced Gouda cheese at Kroger-owned supermarkets, including the Metro Market at 12735 W. Capitol Drive in Brookfield, Wisconsin, between June and September 2021, as well as at other times. Id. at ¶75. She says that the cheese sells for "no less than approximately" $3.99 for an eight-once package of ten slices; she said that she purchased the cheese for at or more than that price and expected that the cheese "was subject to at least some actual smoking to provide its smoked taste," based on the label on the front of the package. Id. at ¶¶59, 76–77. She says she relied on the representations "Smoked Gouda" and "Distinctive, Smoky Flavor" on the front label as a reference to the cheese having been smoked "over hardwoods" and having its taste as a result of "being smoked on hardwoods." Id. at ¶¶78-79. She says she had no reason to know that the cheese "was not subject to any smoking," and that she wanted not just

2

a "smokey" taste but "a product that was smoked over hardwood, so that its taste and color did not need so much, or any, added 'smoke flavor.'" Id. at ¶¶80-81. The plaintiff asserts that she would not have purchased the cheese if she had known "the representations were false and misleading," saying that she chose the defendant's cheese over similar products "which were represented similarly, but which did not misrepresent their attributes and/or lower-priced products which did not make the statements and claims made by Defendant." Id. at ¶¶82-83. She claims that the product "was worth less than what [she] paid," and that she would not have paid as much "absent Defendant's false and misleading statements and omissions." Id. at ¶84. The plaintiff says that she will purchase the cheese again "when she can do so with the assurance that Product's representations are consistent with its composition." Id. at ¶85.

B. Smoking Process Allegations

The plaintiff asserts that smoking is used to preserve food or improve its flavor by exposing the food to smoke, typically from burning wood; she says the "drying action of the smoke and the different phenol compounds help to preserve protein-rich foods such as meat, cheese, almonds, and fish." Id. at ¶¶2–3. The plaintiff says that the type of wood used affects the taste of the cheese. Id. at ¶¶6–9. She alleges that while convenient, "smoke flavor"—"which is smoke condensed into a liquid form"—does not "supply the rich, layered combination of phenols and other odor-active compounds compared to where a food's taste is derived entirely from being smoked over wood." Id. at ¶¶10-11.

3

The plaintiff maintains that consumer demand for smoked foods has increased over the past two decades, a trend recognized by the cheese industry. Id. at ¶¶12–13.

The plaintiff claims that the liquid smoke flavor contains four hundred flavor compounds, including "pyrazines, aromatic hydrocarbons, alcohols, organic acids, esters, furans, phenols, carbonyl and non—carbonyl compounds, and various oxygen- and nitrogen-containing heterocyclic compounds. Id. at ¶15. The plaintiff insists that the liquid smoke additive fails to match the actual taste of wood-smoked product because it does not have the same balance of phenolic compounds and because smoke generation produces compounds that can't be duplicated synthetically. Id. at ¶¶16-22. She states that the defendant's failure to disclose the addition of the liquid smoke flavor gives consumers a false impression that the cheese "was made similarly to comparably labeled products and smoked over hardwood, when it was not." Id. at ¶23.

The plaintiff cites to research by Mintel[1] in stating that the demand is increasing for "foods that get their taste only from a characterizing ingredient or a natural processing method." Id. at ¶24. She says that Mintel reports that consumers "are increasingly aware of the lack of transparency in the flavor industry," which she says is "regularly highlighted" by non-profits such as the Environmental Working Group (EWG). Id. at ¶25. The plaintiff asserts that the

_____

[1] The complaint does not explain what "Mintel," is but a Google search reveals the following: "The world's leading market intelligence agency." https://www.mintel.com/about-mintel.

4

EWG identifies foods with "natural" flavors that also contain additives like emulsifiers and solvents which "may pose health or nutritive risks." Id. at ¶26. The plaintiff says that the European Food Safety Authority has found that smoke flavorings in foods "contain compounds at levels which may pose a toxic risk when consumed." Id. at ¶27.

C.    State and Federal Regulations

The plaintiff asserts that there are "federal and identical state regulations requir[ing] that a product's front label disclose the source of any characterizing or main flavor." Id. at ¶30 (citing 21 C.F.R. §101.22(i); Wis. Admin. Code ATCP 90.10(1)[2]). She says that in enacting regulations for flavoring, the FDA considered the term "smoked" to be misleading when "true smoke is absorbed in a liquid or other medium, and that medium is added to food to provide a smoke flavor." Id. at ¶33 (citing 38 Fed. Reg. 20721, statements of Hon. H.C. Adams). The plaintiff says that in such cases, the front label of the product should contain the description "with added smoke flavor," "[with] natural smoke flavor," "flavor added," or "smoke flavored." Id. at ¶¶34, 38. She says that there are specific federal regulations addressing cheeses, including Gouda cheese, id. at ¶35 (citing 21 C.F.R. §§133.193(b), 133.142), and that the FDA recently has warned companies regarding product labeling and smoked ingredients, id. at ¶¶36–37.

---

[2] "ATCP" stands for "Agriculture, Trade and Consumer Protection."

5

D.   Allegations Specific to the Defendant

The plaintiff alleges that the defendant's product label description—
"Smoked Gouda"—violates 21 U.S.C. §343(a)(1) and "ch. 97.03 ('Standards:
misbranding)'" (although this paragraph does not identify the source of ch.
97.03). Id. at ¶39. She asserts that the statement "Distinct, Smoky Flavor" is
misleading, as is the term "Smoked Gouda," because the flavor is from added
smoke flavor and the cheese is not smoked. Id. at ¶¶41-42. She alleges that
consumers are misled because the "absence of required, qualifying terms on
the front label, i.e., 'natural smoke flavored Gouda, 'smoke flavored Gouda,' or
'Gouda with natural [added] smoke flavor,' gives them the false impression that
all the Product's smoked attributes—including taste and color—are imparted
by smoking, when none of these attributes are." Id. at ¶50 (citing 21 C.F.R.
§101.22(i)(1)(i)). She also alleges that the smoke flavor darkens the product,
further misleading customers, even those who "double check" the ingredients
and see "smoke flavor" listed. Id. at ¶¶51-52.

The plaintiff says that whether a food has been smoked or contains liquid
smoke is "basic front label information consumers rely on when making quick
purchasing decisions at the grocery store." Id. at ¶43. She says actual smoked
Gouda exists in the marketplace and is not rare or an expensive delicacy that
would make a reasonable customer scour the label for further information for
the source of the smoked flavor. Id. at ¶¶44–45. The plaintiff alleges that there
are actual smoked Gouda products on the market, labeled identically to the
defendant's, that get their flavor entirely from being smoked over hardwoods,

6

while the defendant's is not smoked and has added smoke flavor. Id. at ¶¶46–47. She asserts that other companies indicate on the front of their packaging when a smoked Gouda product contains some or all liquid smoke flavoring. Id. at ¶¶48-49. She says the defendant revealed the "smoke flavor" ingredient only on the back of its packaging, in the ingredient list. Id. at ¶49.

Finally, the plaintiff alleges that reasonable consumers rely on a company to "honestly identify and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives." Id. at ¶54. She asserts that the defendant gained an advantage over other companies and against consumers seeking actual smoked products and that the consumers were in fact purchasing products of lower value than represented by the defendant. Id. at ¶¶55–56. She says that the defendant sold more of the product at a higher price than it would have "in the absence of this misconduct," and that consumers would not have bought the chesses or would have paid less for it. Id. at ¶¶57–58. She says the $3.99 price of the cheese was premium compared to similar products. Id. at ¶59.

E.    Class Allegations

The plaintiff seeks to bring a class claim under Fed. R. Civ. P. 23(b)(2) and (b)(3) for two classes:

> **Wisconsin Class**: All persons in the State of Wisconsin who purchased the Product during the statutes of limitations for each cause of action alleged.

> **Consumer Fraud Multi-State Class**: All person in the States of Georgia, Kentucky, Michigan, Tennessee, and West Virginia, who purchased the Product during the statutes of limitations for each cause of action alleged.

7

Id. at ¶86.

## II. Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); Hosea v. Slaughter, 669 F. App'x 791, 792 (2016); Gibson v. City of Chi., 910 F.2d 1510, 1520 (7th Cir. 1990). "[A] judge reviewing a motion to dismiss under Rule 12(b)(6) cannot engage in fact-finding." In re Consolidated Industries, 360 F.3d 712, 717 (7th Cir. 2004) (citing Int'l Marketing, Ltd. v. Archer-Daniels-Midland Co., 192 F.3d 724, 730 (7th Cir. 1999)). To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." Alarm Detection Systems, Inc. v. Vill. of Schaumburg, 930 F.3d 812, 821 (7th Cir. 2019) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

When evaluating a motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light most favorable to the plaintiff, accepts all well-pleaded facts as true and draws reasonable inferences in the plaintiff's favor. Taha v. Int'l Bhd. of Teamsters, Local 781, 947 F.3d 464, 469 (7th Cir. 2020) (citing Yeftich v. Navistar, Inc., 722 F.3d 911, 915 (7th Cir. 2013)). "[L]egal conclusions and conclusory allegations merely reciting the elements of

8

a claim," however, "are not entitled to this presumption of truth." <u>McCauley v.</u> <u>City of Chi.</u>, 671 F.3d 611, 616 (7th Cir. 2011) (citing <u>Iqbal</u>, 556 U.S. at 678).

Rule 9(b) of the Federal Rules of Civil Procedure requires heightened pleading for fraud allegations. <u>U.S. ex rel. Grenadyor v. Ukrainian Vill.</u> <u>Pharmacy, Inc.</u>, 772 F.3d 1102, 1105–06 (7th Cir. 2014). This requirement "includes pleading facts that make the allegation of fraud plausible." <u>Id.</u> at 1106 (citing <u>Windy City Metal Fabricators & Supply, Inc. v. CIT Tech Fin.</u> <u>Servs., Inc.</u>, 536 F.3d 663, 668-69 (7th Cir. 2008)). When a plaintiff alleges fraud or mistake, the plaintiff "must state with particularity the circumstances constituting fraud or mistake." The "complaint must state the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." <u>Id.</u> (citing <u>Bankers Trust Co. v. Old Republic</u> <u>Ins. Co.</u>, 959 F.2d 677, 683 (7th Cir. 1992)); <u>see also</u> <u>Midwest Grinding Co. v.</u> <u>Spitz</u>, 976 F.2d 1016, 1020 (7th Cir. 1991) ("the complaint must, at a minimum, describe the predicate acts with some specificity and 'state the time, place, and content of the alleged communications perpetrating the fraud.'"). The rule protects against "the potential stigmatic injury that comes with alleging fraud and the concomitant desire to ensure that such fraught allegations are not lightly leveled." <u>Pirelli Armstrong Tire Corp. Retiree Med.</u> <u>Benefits Trust v. Walgreen Co.</u>, 631 F.3d 436, 441 (7th Cir. 2011). It "ensures that a plaintiff have some basis for his accusations of fraud before making those accusations and thus discourages people from including such

9

accusations in complaints simply to gain leverage for settlement or for other ulterior purposes." Uni*Quality, Inc. v. Infotronx, Inc., 974 F.2d 918, 924 (7th Cir. 1992).

### III. Motion to Dismiss

The court has diversity jurisdiction under 28 U.S.C. §1332 because the plaintiff is a citizen of Wisconsin, the defendant is an Ohio corporation with its principal place of business in Ohio and the amount in controversy is over $75,000. Dkt. No. 1 at ¶¶61–63.

### A. Wis. Stat §100.20

The complaint's first claim for relief is titled "Wisconsin Unfair Trade Practices Act ("UTPA") Wis. Stat. §100.20 (Consumer Protection Statute)." Dkt. No. 1 at 14. There are nineteen paragraphs of allegations under this claim, and within those paragraphs, the plaintiff references "Violations of Chapter ATCP 90," id. at ¶98; Wis. Stat. §97.09, id. at ¶99; §ATCP 90.02, id. at ¶¶101-102, 104; Wis. Admin. Code §90.10, id. at ¶¶103-104; and 21 C.F.R. §§101.22(i)(l)(i) and 133.193(b), id.at ¶103. The claim requires some unpacking.

The Wisconsin Department of Agriculture, Trade and Consumer Protection (DATCP) has a Bureau of Consumer Protection, which "enforces powerful consumer protection laws, including laws prohibiting *fraudulent representations* and *unfair business practices.*" Chapter 100 of the Wisconsin Statutes is titled "Marketing; Trade Practices." https://datcp.wi.gov/Pages/About_Us/BCPApplicableLaws.aspx. On its website, the Bureau of Consumer Protection explains:

- The Fraudulent Representations Law (Wisconsin Statutes section 100.18) broadly prohibits advertising or sales claims that are "untrue, deceptive or misleading."

- The Unfair Business Practices Law (Wisconsin Statutes section 100.20) is even more sweeping. It authorizes DATCP to prohibit "unfair" business practices (and prescribe fair practices) by rule or order. This is one of the strongest state consumer protection laws in the nation.

These overlapping laws apply to almost every business in the state. Together, they provide the foundation for the state's general consumer protection program. Because they are so broad, they overlap and support many other DATCP programs (including food safety and labeling).

Id.

Section 100.20[3]—the section under which the plaintiff has brought a claim against the defendant—states that "[m]ethods of competition in business and trade practices in business shall be fair. Unfair methods of competition in business and unfair trade practices in business are hereby prohibited." Wis. Stat. §100.20(1). The statute lists several methods of competition and trade practices that qualify as "unfair"—none of which appear to explicitly include the alleged misleading labeling of a food product.

The complaint does not mention any of the methods of competition or trade practices identified in the statute as unfair. The only subsection of Wis. Stat. §100.20 the complaint references is Wis. Stat. §100.20(5), which says that

---

[3] The complaint refers to Wis. Stat. §100.20 as the "Wisconsin Unfair Trade Practices Act." Dkt. No. 1 at 14. As Chief Judge James Peterson of the Western District of Wisconsin has noted, "neither the statute itself nor case law construing it have given the statute that name." Tropp v. Prairie Farms Dairy, Inc., No. 20-cv-1035-jdp, 2021 WL 5416639, at *2 n.1 (W.D. Wis. Nov. 19, 2021).

a person who suffers a pecuniary loss because of "any order issued under this section" may sue for damages and recover twice the amount of the loss, as well as costs and fees.

The complaint alleges that "[v]iolations of Chapter ATCP 90 are subject to the penalties and remedies of 100.20(5)." Dkt. No. 1 at ¶98. Chapter 90 of that section is titled "Fair Packaging And Labeling." Wis. Admin. Code §ATCP 90. In asserting that violations of Chapter 90 of Wisconsin's ATCP administrative code are subject to the penalties and remedies of Wis. Stat. §100.20(5), the complaint alleges that in its order promulgating Chapter 90, the DATCP's "analysis" stated:

> Under [WIS. STAT. §] 97.09(1) ... federal rules related to food definitions and standards of identity, quality and fill of container are automatically enforceable under state law. In order to facilitate enforcement of other [federal Nutrition Labeling and Education Act] labeling rules under state law, this rule incorporates FDA and USDA rules by reference under [WIS. STAT. §] 97.09(4)[.]

Dkt. No. 1 at ¶99. (The complaint provides no citation for this "analysis.")

Wis. Stat. §97.09(1) provides that

> [d]efinitions and standards of identity, composition, quality and fill of container for foods, and amendments thereto, now or hereafter adopted under the federal act or this chapter are definitions and standards of identity, composition, quality and fill of container under s. 97.03. However, when such action will promote honesty and fair dealing in the interest of consumers, the department may amend, stay or reject such federal regulations or make rules establishing definitions and standards of identity, composition, quality and fill of container for foods where no federal regulations exist, or which differ from federal regulations.

Wis. Stat. §97.09(4) says that the "department"—presumably the

Department of Agriculture, Trade and Consumer Protection—"may, by rule,

12

establish and enforce standards governing the production, processing, packaging, labeling, transportation, storage, handling, display, sale, including retail sale, and distribution of foods that are needed to protect the public from the sale of adulterated or misbranded foods."

Returning to what the plaintiff alleges the defendant did, the complaint alleges that the defendant's labeling violated three provisions of ATCP Chapter 90: 90.02(1), 90.02(3) and 90.10(1). Dkt. No. 1 at ¶¶101, 102, 103.

Wis. Admin. Code §ATCP 90.02(1) prohibits anyone from selling or distributing a "consumer commodity in package form unless each package clearly and conspicuously identifies the commodity contained in that package;" the package must carry a "declaration" that identifies the commodity by "its usual or common name, by its legally required name, if any, or by a generic name or other appropriate description that is readily understood by customers." Wis. Admin. Code §ATCP 90.02(3) prohibits declarations of identity that are "false, deceptive, or misleading," and says that "[i]ngredients or components that are not present in the commodity in substantial or significantly effective amounts may not be featured in the declaration of identity." Wis. Admin. Code §ATCP 90.10(1) says that except for meat and poultry products, food "sold or distributed for sale in this state shall be labeled in compliance with applicable rules adopted by the United States food and drug administration under 21 CFR 101, 102, 104, 105, and 130."

Section 101.22(i)(l)(i) of 21 C.F.R., referenced in the complaint, says:

If the food is one that is commonly expected to contain a characterizing food ingredient, e.g., strawberries in "strawberry

13

shortcake", and the food contains natural flavor derived from such ingredient and an amount of characterizing ingredient insufficient to independently characterize the food, or the food contains no such ingredient, the name of the characterizing flavor may be immediately preceded by the word "natural" and shall be immediately followed by the word "flavored" in letters not less than one-half the height of the letters in the name of the characterizing flavor, e.g., "natural strawberry flavored shortcake," or "strawberry flavored shortcake".

21 C.F.R. §133.193(b), also referenced in the complaint, provides that "[t]he name of a spiced or flavored standardized cheese shall include in addition to the varietal name of the natural cheese, a declaration of any flavor and/or spice that characterizes the food, in the manner prescribed in § 101.22 of this chapter."

Why did the plaintiff cite eight state and federal statutes and regulations to assert a claim that the defendant's failure to include the word "flavoring" on the front of the cheese package violated the Wis. Stat. §100.20? One reason is that food safety and labeling law is made up of a complicated, interconnected web of statutes and regulations. Another may be that the plaintiff was trying to demonstrate that Wis. Stat. §100.20 provides her a private right of action. The defendant has not argued that the plaintiff does not have a private right of action under Wis. Stat. §100.20,[4] but the court is required to assure itself that the plaintiff has the ability to bring a cause of action under the statute.

In Emergency One, Inc. v. Waterous Co., Inc., 23 F. Supp. 2d 959, 971 (E.D. Wis. 1998), the federal district court for the Eastern District of Wisconsin

---

[4] The briefing is less helpful than it could be. Both parties address arguments that the opposing party did not make, fail to address arguments that the opposing party *did* make, address multiple claims in a single argument and generally muddy waters that could have been, if not clear, less cloudy.

14

held that there was no private right of action under Wis. Stat. §100.20 unless

the plaintiff was a victim of a violation of an order issued by the Department of

Agriculture, Trade and Consumer Protection:

> [N]o private cause of action exists under § 100.20, except for violation of an order issued by the Department under this section.
>
> . . . .
>
> Plaintiff does not allege that any Department order prohibiting unfair trade practices has been entered against defendants, much less that defendants have violated such an order. Plaintiff argues that the above subsection only serves to limit double recovery to instances where an order has been entered and violated, but that § 100.20 as a whole should be construed to support a general private cause of action for unfair trade practices. There is no support for this novel reading of the statute in case law or in the structure of Chapter 100. Like Chapters 93 to 99 of the Wisconsin Statutes, Chapter 100 establishes the administrative role of the Department in one of several regulated areas of agriculture, trade and consumer protection—in this case marketing and trade practices. Regulatory enforcement in these chapters is almost exclusively the province of the Department. Under this scheme, a private cause of action must be clearly indicated by the legislature.
>
> Chapter 100 betrays no suggestion that such a private right exists, absent a violation of a Departmental order. *See, e.g.*, Wis. Stat § 100.26 (on penalties); § 100.263 (on recovery for costs of investigation). Where, as here, the legislature has enacted a comprehensive regulatory scheme, [the court] must assume this scheme is exclusive.

Id., 23 F. Supp.2d at 971-72.

Another judge in the Eastern District came to the same conclusion two

years ago. See Stoller v. Walworth Cty., No. 17-CV-1349-JPS, 2020 WL

3618453, *5 (E.D. Wis. July 2, 2020) (quoting Emergency One, Inc, 23 F. Supp.

2d at 971 ("'[N]o private cause of action exists under § 100.20, except for

violation of an order issued by the Department [of Agriculture, Trade and Consumer Protection] under [section 100.20].'").

In contrast, the Wisconsin Court of Appeals has held that there *is* a private right of action under Wis. Stat. §100.20. In <u>Gallego v. Wal-Mart Stores, Inc.</u>, 288 Wis. 2d 229 (Wis. Ct. App. 2005), the plaintiff bought artificially colored salmon from one of the defendant's stores, believing that it was naturally raised or "wild." <u>Id.</u> at 233. Among other things, he claimed that the defendant's failure to label the salmon as artificially colored constituted an unfair trade practice under Wis. Stat. §100.20. <u>Id.</u> at 244. Like the plaintiff here, the plaintiff in <u>Gallego</u> argued that he had suffered pecuniary losses due to the defendant's violation Wis. Admin. Code §ATCP 90.10(1). <u>Id.</u>

The defendant in <u>Gallego</u> argued that Wis. Stat. §100.20(5) granted a private right of action only for an order issued under that section—the reasoning employed by the federal courts in <u>Emergency One</u> and <u>Stoller</u>. The Wisconsin Court of Appeals disagreed. The court explained:

> The following explanatory note appears at the beginning of WIS. ADMIN. CODE ch. ATCP 90:
>
>> This chapter is adopted under authority of ss. 93.07(1), 97.09(1) and (4), 97.42(4)(j), 98.07(3) and (4), and 100.20(2), Stats. Violations of this chapter are subject to the penalties and remedies provided under ss. 97.72, 97.73, 98.26, 100.20(5) and (6), and 100.26(3) and (6), Stats.
>
> The clear import of this note is that the DATCP views its authority for all of the regulations included within ch. ATCP 90 as flowing from numerous, overlapping statutory directives, one of which is the legislature's directive under WIS. STAT. § 100.20(2)(a) that the department may enact rules forbidding unfair trade practices. Moreover, the department plainly expresses its position in the

16

introductory note that violations of any of the provisions in ch. ATCP 90 may be pursued by private parties under § 100.20(5).

Id. at 245. See also, Kaskin v. John Lynch Chevrolet-Pontiac Sales, Inc., 318 Wis. 2d 802, 809 (Wis. Ct. App. 2009) (Wis. Stat. §100.20(5) "provides a private remedy for consumers who fall victim to unfair methods of competition and trade practices prohibited by, inter alia, general orders of the Department of Agriculture, Trade and Consumer Protection promulgated under § 100.20(2). In other words, § 100.20(5) 'supplies the teeth' to the DATCP orders.").

In a later decision, the Emergency One court acknowledged the Wisconsin Court of Appeals' holding in Gallego in considering a plaintiff's claim that that a violation of an ATCP regulation constituted a violation of an "order" under Wis. Stat. §100.20. Wyatt v. Philip Morris USA, Inc., No. 09-C-0597, 2013 WL 4046334, at *5 (E.D. Wis. Aug. 8, 2013).

> This court must defer to the Wisconsin Court of Appeals' interpretation.
>
> We "must defer to a state court's interpretation of the state's statute." *Williams v. Duckworth*, 738 F.2d 828, 833 (7th Cir. 1984); *see also L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc.*, 9 F.3d 561, 574 (7th Cir. 1993), *as amended on denial of reh'g* (Dec. 8, 1993), *and abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, ___ U.S. ___, 134 S. Ct. 1377 . . . (2014) ('Of course, federal courts are bound to state court precedents in interpreting state law."). "In the absence of a decision by the highest state court, ... [d]ecisions of intermediate appellate state courts generally control unless there are persuasive indications that the highest state court would decide the issue differently." *L.S. Heath & Son*, 9 F.3d at 574.

Laborers' Pension Fund v. Miscevic, 880 F.3d 927, 934 (7th Cir. 2018).

Under the Wisconsin court's interpretation of the statute, the plaintiff has a private right of action under Wis. Stat. §100.20.

17

1.    *The Plaintiff's Choice of Claim*

Strangely, the defendant argues that the plaintiff has asserted a cause of action for a "violation of the Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.20 ("WDTPA"), incorrectly identified in the Complaint as the Wisconsin Unfair Trade Practices Act or UTPA." Dkt. No. 13 at 12. It is not clear whether the defendant believes that Wis. Stat. §100.20 is commonly referred to as the Wisconsin *Deceptive* Trade Practices Act, or whether the defendant believes that the plaintiff intended to bring, or should have brought, her claim under the statute that *is* commonly referred to as the Wisconsin Deceptive Trade Practices Act—Wis. Stat. §100.18—rather than under Wis. Stat. §100.20. If it is the former, the defendant is mistaken—Wis. Stat. §100.18 is commonly called the "Wisconsin *Deceptive* Trade Practices Act." If it is the latter, the defendant does not have the authority to dictate to the plaintiff which claims she should have brought.

Although the plaintiff did not bring her claim under the Wisconsin *Deceptive* Trade Practices Act (Wis. Stat. §100.18), the defendant spends some four pages of its brief arguing that the label of its cheese "does not violate the Wisconsin Deceptive Trade Practices Act as a matter of law." Id. at 15-19. It cites cases addressing claims brought under Wis. Stat. §100.18. Id. (citing, *e.g.*, Tietsworth v. Harley-Davidson, Inc., 270 Wis. 2d 146 (Wis. 2004); Novell v. Migliaccio, 309 Wis. 2d 132 (Wis. 2008); Beardsall v. CVS Pharmacy, Inc., 953 F.3d 969 (7th Cir. 2020); Weaver v. Champion Petfoods USA Inc., 471 F. Supp. 3d 876 (E.D. Wis. 2020)).

The plaintiff makes clear in her brief in opposition to the motion to dismiss that she brought her claim under what she calls the "Wisconsin Unfair Trade Practices Act ("UTPA"), Wis. Stat. § 100.20 *et seq.*, Wis. Admin. Code ATCP § 90 *et seq.* . . . ." Dkt. No. 15 at 8[5]; <u>see also</u> Dkt. No. 15 at 10, 13. The defendant's arguments that the plaintiff has not stated a claim under the Wisconsin Deceptive Trade Practices Act are irrelevant.

2.    *Preemption*

The defendant argues that

> [t]o the extent that Plaintiff alleges that the Product's packaging violates the applicable food labeling regulations promulgated by the Food and Drug Administration and the State of Wisconsin, state regulations are preempted by the Food and Drug Cosmetic Act ("FDCA") as amended by the Nutrition Labeling and Education Act "NLEA"), 21 U.S.C. § 341 et seq., and such claims are fully within the purview of the FDA and not properly before this Court.

Dkt. No. 13 at 15. It states that under Wis. Admin. Code §ATCP 90.10(1) (one of the regulations the plaintiff alleges the defendant has violated), food sold or distributed for sale in Wisconsin must be labeled in compliance with federal Food and Drug Administration rules. <u>Id.</u> at 19. The defendant maintains that the Food, Drug and Cosmetic Act, 21 U.S.C. §301, "preempts state laws or regulations that purport to impose obligations that are 'different from or in addition to' the labeling requirements of the FDA." <u>Id.</u> (citing <u>Regan v. Sioux Honey Ass'n Coop.</u>, 921 F. Supp. 2d 938, 940-43 (E.D. Wis. 2013); <u>Wyeth v. Levine</u>, 555 U.S. 555, 575 (2009)).

---

[5] She also calls it her "WDTPA claim." Dkt. No. 15 at 10.

Case 2:21-cv-01171-PP    Filed 10/03/22    Page 19 of 51    Document 17

Although the plaintiff did not mention it, the Seventh Circuit has held that

> [p]reemption . . . is "an affirmative defense upon which the defendants bear the burden of proof." *Fifth Third Bank ex rel. Tr. Officer v. CSX Corp.*, 415 F.3d 741, 745 (7th Cir. 2005). "Affirmative defenses do not justify dismissal under Rule 12(b)(6)." *Doe v. GTE Corp.*, 347 F.3d 655, 657 (7th Cir. 2003). Moving for judgment on the pleadings under Rule 12(c) is the more appropriate way to address an affirmative defense. *Bausch v. Stryker Corp.*, 630 F.3d 546, 561 (7th Cir. 2010).

Benson v. Fannie May Confections Brands, Inc., 944 F.3d 639, 645 (7th Cir. 2019). The Benson court held that the district court erred in penalizing the plaintiff "for failing to anticipate an affirmative defense in her complaint and dismissing the action based on FDCA preemption." Id.

Even if the defendant had properly raised the preemption defense in a motion for judgment on the pleadings under Rule 12(c), it would not have prevailed. The defendant seizes on the complaint's reference to 21 C.F.R. §101.22(i)(1)(i). Id. at 20 (citing dkt. no. 1 at ¶50). It says that by citing that federal regulation, the plaintiff is "incorrectly" urging the court to "make the leap that if the Product's packaging fails to comply with that regulation, the packaging is misleading *per se*." Id. The defendant asserts that the plaintiff cannot proceed on a claim under the FDCA[6] because "'Congress did not expressly intend for the FDCA to become a basis for civil liability under federal law'" and thus that federal court is not the proper forum in which to bring an

---

[6] Title 21 of the Code of Federal Regulations contains the regulations relevant to enforcement of the Food, Drug and Cosmetic Act, 21 U.S.C. §301, *et seq.*

FDCA claim. Id. (quoting Marvin v. Zydus Pharms. (USA) Inc., 203 F. Supp. 3d 985, 990 (W.D. Wis. 2016)). The defendant says that violations of the "FDA"—presumably the Food and Drug Administration—are enforceable only by the government, citing Cali v. Danek Med., Inc., 24 F. Supp.2d 941, 954 (W.D. Wis. 1988), and says that "to the extent Plaintiff attempts to bootstrap her state consumer protection law claims to alleged violations of FDA regulations, such claims are preempted and must be dismissed as a matter of law." Id.

This is not a preemption defense. It is an argument that the FDCA does not provide a private right of action—which is what Cali and other courts have held. But the plaintiff has not asserted a cause of action under the FDCA. Just as the complaint does not allege violations of the Wisconsin Deceptive Trade Practices Act, it does not allege a cause of action or claim under any FDA regulation. It cites 21 C.F.R. §101.22(i) as an example of a federal regulation that requires a product's front label to disclose the source of a "characterizing" or "main" flavor (and notes that Wis. Admin. Code §ATCP 90.10(1) requires food sold or distributed for sale in Wisconsin to comply with the regulations in 21 C.F.R. 101). Dkt. No. 1 at ¶30. It cites the federal regulations governing flavored cheeses. Id. at ¶35. It references these regulations in a couple of other places. Id. at ¶¶48, 50.

The closest the complaint comes to making a "claim" under the FDCA regulations is in ¶103, where it alleges that "Defendant violates Wis. Admin. Code §ATCP 90.10(1) because the Product is not labeled in compliance with the applicable FDA rule and regulations, based on violations of 21 C.F.R.

21

§§101.22(i)(l)(i), 133.193(b)." This allegation does not constitute a claim that the defendant violated the FDCA regulations, nor is it "bootstrapping." It is an allegation that the defendant did not do what Wis. Admin. Code §ATCP 90.10(1) required it to do.[7] The plaintiff must allege that the defendant did not comply with the requirements of regulations listed in ATCP 90.10(1) in order to state a claim under ATCP 90.10(1).

The defendant has not shouldered its burden to prove the defense of preemption, either of the Wis. Admin. Code §ATCP 90.10(1) claim or of the Wis. Stat. §100.20 claim as a whole.

3.    *ATCP 90.02(1)*

Under ATCP 90.02(1),

> [n]o person may sell or distribute a consumer commodity in package form unless each package clearly and conspicuously identifies the commodity contained in that package. The declaration shall identify the commodity by its common or usual name, by its legally required name, if any, or by a generic name or other appropriate description that is readily understood by consumers.

The plaintiff alleges that the defendant's product declaration of "Smoked Gouda" "is not the Product's 'common or usual name,' 'legally required name,'

---

[7] The district court for the Southern District of New York rejected a similar claim—that the plaintiff was attempting to enforce the FDCA even though that statute provides no private right of action—in Colpitts v. Blue Diamond Growers, 527 F. Supp. 3d 562, 579 (S.D.N.Y. 2021) (noting that the Second Circuit had held that a state consumer fraud claim was viable "where the plaintiff "make[s] a free-standing claim of deceptiveness ... that happens to overlap with a possible claim' under another statute that is not independently actionable.'" Id. (quoting Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107, 127 (2d Cir. 2017)).

or an 'appropriate description that is readily understood by consumers,' because it is not smoked." Id. at ¶101.

The defendant compares the plaintiff's claim to the claims raised in Tropp. Dkt. No. 13 at 21. In Tropp, the plaintiff claimed that an ice cream brand's product description stated that it was "Premium Vanilla Bean Ice Cream" but that its "common or usual name" was "Artificially Flavored Vanilla Bean Ice Cream with Exhausted Vanilla Bean Specks." Tropp, 2021 WL 5416639, at *3. The court disagreed, finding that the phrase "common or usual name," as used in ATCP 90.02(1), "suggests that it is a general description of the *type* of product, not a description of the ingredients or source of its flavor." Id. (discussing Loeb v. Champion Petfoods USA Inc., No. 18-CV-494-JPS, 2018 WL 2745254, *7 (E.D. Wis. June 7, 2018)). The court dismissed the plaintiff's claim, determining that the common and usual name for the product was "ice cream," and that the plaintiff had not alleged that the product was falsely labeled as ice cream. Id

Two years before Tropp, the Eastern District of Wisconsin confronted a similar argument in Loeb. The plaintiff in Loeb sued a dogfood company based, in part, on the defendant's use of the term "biologically appropriate dog food" on its packaging. Loeb, 2018 WL 2745254, at *7. The plaintiff alleged that this was inaccurate because the food was contaminated with heavy metals, but the court dismissed the claim because the "common or usual" name of the product required to be identified under Wis. Admin. Code §ATCP 90.02(1) was "dog

23

food," which the plaintiff did not allege was inaccurate. Id. ("Dog food must be labeled as dog food, and not cat (or human) food.").

The plaintiff attempts to distinguish Tropp, arguing that "[w]hile 'the term "smoked" may be used to describe a flavor . . . it can also be used to describe a process.'" Dkt. No. 15 at 13 (citing Rudy v. Fam. Dollar Stores, Inc., No. 21-cv-3575, 2022 WL 345081, at *4 (N.D. Ill. Feb. 4, 2022); Colpitts, 527 F. Supp. 3d at 581). The court does not disagree that "smoked" may refer both to a flavor and a process, but that fact does not address the "common or usual" name requirement of ATCP §90.02(1).

The plaintiff discusses Bell v. Publix Super Markets, Inc., 982 F.3d 468 (7th Cir. 2020), and compares the "smoked" description to the "100% Grated Parmesan Cheese" description which survived a motion to dismiss in that case. Dkt. No. 15 at 10-11. In Bell, the complaint alleged that Parmesan cheese sold by several companies featuring labels advertising the product as "100% Grated Parmesan Cheese" when the product contained between four and nine percent added cellulose powder and potassium sorbate to prevent the cheese from caking and getting moldy. Bell, 982 F.3d at 473-74. The plaintiffs sued under fourteen state consumer protection statutes "spanning ten states." Id. at 474. (Wisconsin was not one of those states. Id. at 474 n.1). The statutes each contained a "general prohibition against advertising that is likely to deceive a substantial portion of reasonable consumers." Id. at 475.

The Bell plaintiffs alleged that "defendants' prominent claims that their products are '100% Grated Parmesan Cheese' are deceptive because they are

24

likely to mislead a significant portion of reasonable consumers, who will focus on the prominent '100%' on the front labels without checking the fine print on the back showing that the products are not 100% cheese." Id. at 474. But Bell did not involve a claim that the "100% Grated Parmesan Cheese" declaration violated ATCP 90.02(1) by failing to identify the commodity by its common or usual name. The Bell plaintiffs claimed *deceptive* trade practices, not a failure to appropriately identify the commodity being sold by its common or usual name. More to the point, the claim in Bell was that while some of the product being sold was Parmesan cheese, some of it was not. That is not the claim the plaintiff makes here. The parties do not dispute that the product contains Gouda cheese, and the label does not say that the package contains "100% Gouda cheese." Bell is not helpful in analyzing a claim that the label violated ATCP 90.02(1) because it did not identify the product by its common or usual name. As the courts in Loeb and Tropp concluded, the label identified the product inside as Gouda cheese; that is sufficient under ATCP 90.02(1).

The court will dismiss the plaintiff's claim under Wis. Stat. §100.20 as it relates to ATCP 90.02(1). The complaint shows that the package clearly and conspicuously identified the commodity contained in that package—Gouda cheese—and that it did so using the common or usual name, "Gouda cheese." See dkt. no. 1 at ¶¶1, 39. Because the plaintiff has not alleged that the product is labeled as something other than Gouda cheese, the court will dismiss her ATCP 90.02(1)) claim.

4. *ATCP 90.02(3)*

Most of the plaintiff's arguments are more relevant to her claim that the label violates Wis. Admin. Code §ATCP 90.02(3), which states that "[t]he declaration of identity under sub. (1) may not be false, deceptive, or misleading. Ingredients or components that are not present in the commodity in substantial or significantly effective amounts may not be featured in the declaration of identity." The plaintiff alleges that the "flavoring components added through smoking a cheese over hardwoods are not present in the Product in any amount, rendering the declaration of the Product's identity— 'Smoked Gouda'—false, deceptive, and misleading." Dkt. No. 1 at ¶102.

While <u>Bell</u> did not involve an ATCP 90.02(3) claim, it addressed claims brought under similar consumer protection statutes prohibiting deceptive labeling. The court stated that the plaintiffs' claims should survive a motion to dismiss "if they have plausibly alleged that the defendants' front labels likely lead a significant portion of reasonable consumers to falsely believe something that the back labels belie." <u>Id.</u> at 476. The court explained:

> We agree with the district court that the context of the entire packaging is relevant. We disagree about applying that principle in this case as a matter of law on the pleadings. What matters most is how real consumers understand and react to the advertising. We therefore join our colleagues in at least three other circuits in holding that an accurate fine-print list of ingredients does not foreclose as a matter of law a claim that an ambiguous front label deceives reasonable consumers. Many reasonable consumers do not instinctively parse every front label or read every back label before placing groceries in their carts.

<u>Id.</u> Although the court conceded that "100% Grated Parmesan Cheese" might be read as meaning that the product is 100% grated, or that the cheese it

26

contains is 100% Parmesan, the court also stated that another reading—"and certainly a plausible reading, is that '100%' applies to all three words: it's all cheese; all the cheese is Parmesan, and it's all grated." Id. at 476-77. The court concluded that "[w]hat matters here is how consumers actually behave—how they perceive advertising and how they make decisions," and it determined that "[t]hese are matters of fact, subject to proof that can be tested at trial, even if as judges we might be tempted to debate and speculate further about them." Id. at 481. That reasoning is compelling here.

The plaintiff points to at least two courts that have considered the impact of the term "smoked" on consumers when featured on a product label (in both cases, the product was almonds). In 2021, the Southern District of New York found that a plaintiff had adequately pled a claim under New York General Business Law §§349 and 350, New York State's deceptive acts and false advertising laws. Colpitts, 527 F. Supp. 3d at 571. The plaintiffs alleged that the defendant's "Smokehouse®" label and the coloring scheme of the package represented that the almonds' smoky flavor was the result of actual smoking, when the ingredient list demonstrated that it was not. Id. at 571-72. The defendant argued that the court should dismiss the claim "because 'no reasonable consumer seeing a red package labeled "Smokehouse" would conclude that the [a]lmonds necessarily derive their taste from having been smoked over a hardwood fire in an outbuilding constructed for that specific purpose.'" Id. at 580. The Colpitts court disagreed, noting that "smokehouse" is a noun that describes a structure, and that nothing on the label would notify a

27

consumer that "Smokehouse" referred to the flavor of the almonds and not the flavoring process. Id. at 581.

The Northern District of Illinois reached the same conclusion earlier this year, regarding a product whose front label announced that the package contained "smoked almonds." In Rudy., the court acknowledged that "[a]lthough the term 'smoked' may be used to describe a flavor . . . it can also be used to describe a process." No. 21-CV-3575, 2022 WL 345081, *4 (N.D. Ill. Feb. 4, 2022). It found that there was nothing on the product's front label suggesting that the term "smoked" referred to flavoring, rather than the process by which the product was produced. Id. The court held that the plaintiff had sufficiently pled a claim for deceptive trade practice under Illinois law. Id.

The defendant argues that its label is different. It says that the "package" says that the cheese inside has a "distinctive, smoky flavor" and that it has "smoke flavor" added. Dkt. No. 13 at 18 (citing Dkt. No. 1 at ¶¶1, 49). The front label of the package—the label the plaintiff alleges is deceptive—does contain the words "distinctive, smoky flavor":



Dkt. No. 1 at ¶1. That wording, however, does not alert the consumer that the "distinctive, smoky flavor" comes from an added flavoring, rather than smoking. A consumer could read the label and conclude that the package contains Gouda that has been smoked and thus has a "distinctive, smoky flavor."

The disclosure that the cheese contains "smoke flavor" is on the ingredient list on the *back* of the package. Dkt. No. 1 at ¶49. The plaintiff argues (albeit in relation to her ATCP 90.02(1) claim) that the ingredient list on the back of the product is not a defense. Dkt. No. 15 at 11-12. Bell supports her argument. And the court in Rudy noted that "numerous courts have rejected the idea that back-label ingredient lists can immunize defendants from suit for ambiguous front labels." Rudy, 583 F. Supp. 3d at 1159-60 (citing Bell and cases from the Northern and Southern Districts of Illinois). The Colpitts court held that "an ingredients list on the back of a package cannot cure a misleading label on the front." Colpitts, 527 F. Supp. 3d at 583 (citing Mantikas v. Kellogg Co., 910 F.3d 633, 637 (2d Cir. 2018)).

In its reply brief, the defendant argues that this case is more analogous to Chiappetta v. Kellogg Sales Co., No. 21-CV-3543, 2022 WL 602505, *2 (N.D. Ill. Mar. 1, 2022). Dkt. No. 16 at 4. In Chiappetta, the plaintiff argued that the package for Kellogg's Unfrosted Strawberry Pop-Tarts was misleading because it gave consumers the impression that either the fruit filling contained only strawberries or that it contained more strawberries than it actually did. Chiapetta, 2022 WL 602505, at *1. The court concluded that the plaintiff had

29

not stated a claim under the deceptive practices provision of the Illinois Consumer Fraud and Deceptive Business Practices Act because she had not identified any untruths on the packaging or any deceptive statements; the front of the package did not contain any information about the amount of strawberries in the filling or whether the filling might contain other fruit. Id. at *5.

The defendant says, "Likewise, here [the defendant] included smoked flavor on the ingredient list so that if any consumer had doubt about the *source* of the smoked flavor, it need only look at the ingredient declaration for clarification;" the defendant argues that the totality of the information on the cheese's packaging available to the consider is not misleading. Dkt. No. 16 at 4. This misstates the holding in Chiapetta—that court did not base its decision on the ingredient list. And the analogy is a bad one. The front of the Pop-Tart package in Chiapetta did not say that the product contained "crushed" strawberries or "fresh-picked" strawberries; it did not give consumers the impression that the filling's flavor was the result of a process. In fact, it did not even say that the filling was strawberry-flavored or that it contained strawberries. The front of the package stated, "Unfrosted Strawberry," with a graphic of a strawberry and a cross-section of Pop-Tart showing red filling. Chiapetta, 2022 WL 602505, at *2. In this case, the front label says that the Gouda is "smoked." As the courts in Colpitts and Rudy explained, "smoked" could refer either to the flavor of the cheese or to a process (one that the plaintiff alleges alters the chemical composition of the cheese itself).

30

The plaintiff has plausibly alleged that the labeling was deceptive, confusing or misleading, based on the allegation that a reasonable consumer could believe "smoked" referred to a process, rather than a flavor, and that the color of the product would add to the confusion. Whether such a consumer would be deceived is, as the Bell court stated, a question of fact that can be tested at trial. But the plaintiff's allegations are sufficient to state a claim under ATCP 90.02(3).

The court will deny the defendant's motion to dismiss the Wisconsin Unfair Trade Practices Act claim arising under ATCP 90.02(3).

> 5. *ATCP 90.10(1)*

The defendant did not address the merits of the plaintiff's claims that it had violated Wis. Admin. Code §ATCP 90.10(1) because it has not labeled the cheese in compliance with 21 C.F.R. §§101.22(i)(l)(i), 133.193(b). It chose to rely solely on its preemption argument. The court will allow the plaintiff to proceed on her Wis. Stat. §100.20 claim to the extent that she alleges a violation of ATCP 90.10(1).

> B. Fraud and Misrepresentation

The plaintiff's second claim alleges on behalf of the "consumer fraud multi-state class" that the defendant violated various consumer fraud statutes of several states. Dkt. No. 1 at 16. Her fourth claim alleges negligent misrepresentation. Id. at 17-18. Her fifth claim alleges fraud. Id. at 18. The defendant generally asserts that all these claims (as well as the plaintiff's consumer protection claims in the first cause of action) require her to plead

"some variation of a deceptive act or practice or a misrepresentation." Dkt. No. 13 at 14-15. The defendant maintains that its packaging "is not deceptive, false or misleading." Id. at 15. It also argues that the negligent misrepresentation and fraud claims are barred by the economic loss doctrine. Id. at 22. And as to the second cause of action—the "consumer fraud multi-state class" claim—the defendant argues that the plaintiff does not have standing to bring claims on behalf of purchasers outside of Wisconsin. Id.

        1.    *Pleading*

The defendant asserts that that the plaintiff "cannot show that [the defendant] made a false representation." Id. at 22. The plaintiff responds that the complaint alleged an "omission-based theory" predicated on the defendant's failure to disclose on the front label the added smoke flavor. Dkt. No. 15 at 18. She also argues that the complaint "adequately alleged" fraud and misrepresentation under Fed. R. Civ. P. 9(b). Id.

To state a claim for negligent misrepresentation under Wisconsin law, a plaintiff must show that

> (1) defendant made a factual representation; (2) which was untrue; (3) which plaintiff believed to be true and relied on to his/her detriment; and (4) defendant breached his duty of care to plaintiff in making the representation at issue.

Ramsden v. Farm Credit Services of North Central Wisconsin ACA, 223 Wis. 2d 704, 721 (Wis. Ct. App. 1998). See also, Malzewski v. Rapkin, 296 Wis. 2d 98, 113 (Wis. Ct. App. 2006). The defendant asserts that it has not made a false representation; it does not address the other elements of a negligent misrepresentation claim. The plaintiff has alleged that the defendant made a

factual representation (that the cheese was "smoked"), that that representation was not true (it contained smoke flavor but had not been subjected to the smoking process), that she relied on the statement that the cheese was smoked and that she suffered pecuniary loss because of that reliance. She also has alleged that the defendant was obligated under state and federal law to provide true information about its product. The plaintiff has stated a claim for negligent misrepresentation.

The plaintiff also has pled the "who, what, when, where, and how" of her fraud claim, sufficient to meet the heightened pleading standard of Rule 9(b). United States ex rel. Presser v. Acacia Mental Health Clinic, LLC, 836 F.3d 770, 776 (7th Cir. 2016) (quoting United States ex rel. Lusby v. Rolls-Royce Corp., 570 F.3d 849, 853 (7th Cir. 2009)). She has alleged that the defendant (who) sold Gouda cheese in a package whose front label untruthfully indicated that the cheese was "smoked" (what). Dkt. No. 1 at ¶¶1, 69. She alleges that it did so between June and September 2021 in stores across several states, including at the Metro Market at 12735 West Capitol Drive in Brookfield, Wisconsin (when and where). Id. at ¶75. As to "how," the plaintiff alleges that the defendant committed the fraud by failing to disclose on the front label of the package that the smoky flavor of the cheese was a result of adding smoke flavor, not of being subjected to the smoking process. Id. at ¶¶23, 129. The plaintiff has adequately pled a claim for fraud.

33

2. *Economic Loss Doctrine*

The defendant argues, however, that the negligent misrepresentation and fraud claims are barred by the economic loss doctrine. Dkt. No. 13 at 22. It asserts that Wisconsin law generally does not permit recovery in tort for solely economic loss. Id. (citing Nigrelli Sys., Inc. v. E.I. Dupont de Nemours and Co., 31 F. Supp. 2d 1134, 1136 (E.D. Wis. 1999); Hinrichs v. Dow Chem. Co., 389 Wis. 2d 669, 687 (Wis. 2020).

The plaintiff responds that her damages are not solely economic. Dkt. No. 15 at 18. She points to her allegation that a former Wisconsin Congressional representative described cheese flavored with "liquid smoke" as being flavored with a "poisonous solution." Id. (quoting Dkt. No. 1 at ¶32).

> The economic loss doctrine is a judicially created doctrine with three primary purposes. First, the doctrine exists to "maintain the fundamental distinction between tort law and contract law...." Second, it protects "commercial parties' freedom to allocate economic risk by contract ...." Third, the doctrine encourages "the party best situated to assess the risk [of] economic loss, the commercial purchaser, to assume, allocate, or insure against that risk." The doctrine has been part of [Wisconsin's] jurisprudence since it was first adopted by [the Wisconsin Supreme Court] in Sunnyslope Grading, Inc. v. Miller, Bradford and Risberg, Inc., 148 Wis.2d 910 . . . (1989).

> [The Wisconsin Supreme Court] [has] described the economic loss doctrine as holding that "a commercial purchaser of a product cannot recover solely economic losses from the manufacturer under negligence or strict liability theories ...." "Economic loss" in the context of the doctrine is defined as "the loss in a product's value which occurs because the product is 'inferior in quality and does not work for the general purposes for which it was manufactured and sold.'" Both direct and consequential economic loss are encompassed within this definition.

> The upshot of the economic loss doctrine is that it "requires transacting parties in Wisconsin to pursue only their contractual

34

remedies when asserting an economic loss claim, in order to preserve the distinction between contract and tort." It "precludes parties under certain circumstances from eschewing the more limited contract remedies and seeking tort remedies."

Heinrichs, 389 Wis.2d at 686-88 (citations omitted).

There is an exception to the economic loss doctrine for fraud in the inducement. Id. at 688.

> To invoke the "fraud in the inducement" exception, a plaintiff must demonstrate three elements: (1) that the defendant engaged in an intentional misrepresentation; (2) that the misrepresentation occurred before the contract was formed; and (3) that the alleged misrepresentation was extraneous to the contract." Stating the third element different, the misrepresentation must "concern[] matters whose risk and responsibility did not relate to the quality or the characteristics of the goods for which the parties contracted or otherwise involved performance of the contract."

Id. at 689 (quoting Kaloti Enters., Inc. v. Kellogg Sales Co., 283 Wis.2d 555, 585 (Wis. 2005).

The plaintiff's negligent misrepresentation and fraud claims arise out of a commercial transaction—her purchase of the Gouda cheese from the defendant.[8] She seeks to recover from the defendant under tort theories—negligent misrepresentation and fraud. The plaintiff argues, however, that the harm she has alleged is not solely economic. The court disagrees. The plaintiff has alleged that she suffered pecuniary harm because "[t]he value of the Product that plaintiff purchased was materially less than its value as represented by the defendant." Dkt. No. 1 at ¶56. She has alleged that the

---

[8] This court has held that "[a] purchase transaction, for example, forms a contract between the buyer and the seller." Kisting v. Gregg Appliances, Inc., No. 16-cv-141, 2016 WL 5875007, *6 (E.D. Wis. Oct. 7, 2016) (citing Meyer v. The Laser Vision Inst., 290 Wis. 2d 764, 779 (Wis. Ct. App. 2006)).

product had an inadequate value because it was inferior in quality. That is the definition of an economic loss. The plaintiff's assertion that she has alleged actual damages borders on frivolous. The fact that a former state congressman called liquid smoke flavoring used to flavor cheese a "poisonous solution" does not allege an injury. The complaint does not state that the plaintiff was physically or mentally harmed by the flavoring in the cheese or even that the flavoring has been proven harmful, only that she spent money on an item that did not match her expectations.

And although she did not invoke it, the fraud-in-the-inducement exception does not help the plaintiff. She cannot prove the third element of the exception—that the defendant's alleged misrepresentation did not relate to the quality or characteristics of the cheese she purchased. That is exactly what the defendant's alleged negligent misrepresentation and fraud involved.

The court will grant the motion to dismiss the common law negligent misrepresentation claim (the fourth claim) and the plaintiff's fraud claim (the fifth claim) as barred by the economic loss doctrine.

### 3. *Class Claim*

As to the plaintiff's second claim—that the defendant violated the statutes of other states that prohibit unfair or deceptive business practices in trade or commerce—the defendant did not address the merits of that claim. Rather, the defendant argues that the plaintiff lacks standing to represent the putative class members who are not Wisconsin residents. Dkt. No. 13 at 22. The defendant argues that "[w]hen determining class certification and standing,

36

the 'logically antecedent' issue should be considered first." Id. at 22-23 (citing Martin v. LG Elecs. USA, Inc., No. 14-cv-83-jdp, 2015 WL 1486517, at *9 (W.D. Wis. March 31, 2015); Ortize v. Fibreboard Corp., 527 U.S. 815, 831 (1999)). It asserts that the plaintiff cannot assert claims under the laws of states where she doesn't live and where she did not suffer injury. Id. at 23 (citing Martin and In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig., No. 09 CV 3690, 2013 WL 4506000, at *8 (N.D. Ill. Aug. 23, 2013)).

The plaintiff responds that the defendant's request is premature and would be appropriate, if at all, at the class certification stage. Dkt. No. 15 at 16. She argues that the defendant is conflating the concept of "standing" with the concept of "choice of law," and asserts that at the pleading stage, she needs to show only that the class members have an Article III controversy. Id. (citing Morrison v. YTB Int'l, Inc., 649 F.3d 533, 536 (7th Cir. 2011)).

The plaintiff has standing if she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016). The plaintiff has alleged all three of those things. She has standing to bring this lawsuit.

As the Seventh Circuit has noted, however, some courts have referred to the concept of "standing to bring a class action." Arreola v. Godinez, 546 F.3d 788, 795 (7th Cir. 2008)). (That is what the Northern District of Illinois did in one of the cases the defendant cites, In re Dairy Farmers of Am., 2013 WL 4506000, at *8 (N.D. Ill. Aug. 23, 2013), discussing the requirements for a

37

plaintiff "[t]o have standing as a class representative"). The Seventh Circuit explained that the problem with that terminology "is that it 'conflat[es] the standing inquiry with the inquiry under Rule 23 about the suitability of a plaintiff to serve as a class representative[.]'" Arreola, 546 F.3d at 795 (citing Payton v. Cty. of Kane, 308 F.3d 673, 677 (7th Cir. 2002)). The Arreola court concluded,

> Though we recognize that prior decisions of this and other courts have sometimes used this kind of terminology, nothing has turned on it. In our view, it is best to confine the term 'standing' to the Article III inquiry and thus to keep it separate from the plaintiff's entitlement to relief or her ability to satisfy the Rule 23 criteria. *Cf. Harriston* [*v. Chi. Tribune Co.*], 992 F.2d [697] at 703 [(7th Cir. 1993)] ("To have standing to sue *as a class representative*, the plaintiff must be part of the class and possess the same interest and suffer the same injury as the class members." (quoting *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 . . . (1977) (emphasis added) (internal quotation marks omitted))); *Holmes v. Fisher*, 854 F.2d 229 (7th Cir. 1988).

> We accordingly conclude that Arreola did have standing to pursue his lawsuit. Whether he is entitled to relief on any or all of those claims and whether he may serve as an adequate class representative for others asserting such claims are separate questions to which we will return shortly.

Id.

The defendant has done exactly what the Seventh Circuit has criticized—it has conflated the Article III constitutional standing inquiry with the inquiry regarding whether the plaintiff meets the Rule 23 requirements to act as a class representative. The defendant's argument that the plaintiff does not meet the Rule 23 class representative requirements is premature.

38

The court will deny the defendant's motion to dismiss the class claim (the second claim).

C.     Breach of Express and Implied Warranties and Magnuson Moss Act

Under the umbrella title "Breaches of Express Warranty, Implied Warrant of Merchantability and Magnuson Moss Warranty Act," the plaintiff alleges that the Gouda cheese product "expressly and impliedly warranted to the plaintiff and class members that it was subject to at least some smoking to provide its smoked taste, instead of only having added smoked flavor." Dkt. No. 1 at ¶116. She says the defendant breached a duty to disclose and/or provide non-deceptive descriptions of the product. Id. at ¶117. The plaintiff alleges that she "provided or will provide notice to defendant, its agents, representatives, retailers, and their employees." Id. at ¶119.

The defendant argues that the plaintiff's express and implied warranty claims fail for three reasons: "(a) she failed to provide [the defendant] with pre-suit notice; (b) she failed to allege the creation of an express warranty; and (c) the Product was and remains merchantable." Dkt. No. 13 at 25. It argues that the claims fail to satisfy the Magnuson Moss Warranty Act's numerosity requirement and fail to allege that there was a warranty. Id. at 28-29.

1.     Pre-suit Notice

The defendant argues that the plaintiff was required to provide it with pre-lawsuit notice of the defect in its product. Id. at 25 (citing Wis. Stat. §402.607(3)(a)). The defendant does not specifically assert that the plaintiff did not provide that notice; it asserts that the plaintiff's "meager paragraph" of

39

allegations (referencing Dkt. No. 1 at ¶119) does not satisfy the plaintiff's burden. Id. at 26.

The plaintiff responds that by filing this lawsuit in October 2021, she notified the defendant of the alleged defect within a reasonable time after her June through September 2021 purchases of the product. Dkt. No. 15 at 16 (citing Dkt. No. 1 at ¶75). She also argues that whether "the 30 days between Plaintiff's discovery of the breach and notifying Defendant constitutes a 'reasonable time' is a question of fact for a jury to decide." Id. at 17 (citing Willson v. Tuxen, 312 Wis. 2d 705, 730 (Wis. Ct. App. 2008)).

Chapter 402 of the Wisconsin Statutes, which the defendant cited, is Wisconsin's version of Article II of the Uniform Commercial Code.[9] Wis. Stat. §402.607(3)(a) says that once a buyer has accepted tender of goods, "[t]he buyer must within a reasonable time after the buyer discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." The Wisconsin Supreme Court has concluded that waiting two months after discovering the breach to provide notice was not "unreasonable." Paulson, 107 Wis.2d at 525). It has not specified whether a buyer is required to give notice before filing suit. The Wisconsin Court of Appeals has ruled several times on disputes regarding the reasonableness of notice given under §402.607(3)(a) but has not held that notice must occur pre-suit to be reasonable. See, *e.g.*, Badger Produce Co. v. Prelude Foods Intern., Inc., 130

---

[9] Wisconsin has adopted the UCC. See Paulson v. Olson Implement Co., Inc., 107 Wis. 2d 510, 523 (1982) ("We note that with the adoption of the Uniform Commercial Code, Chapter 401, Stats. . . .").

Wis. 2d 230 (Wis. Ct. App. 1986); Wilson v. Tuxen, 312 Wis. 2d 705 (Wis. Ct. App. 2008); Halderson v. Star Blends, LLC, 367 Wis. 2d 350 (Wis. Ct. App. 2016).

Wis. Stat. §402.607(3)(a) is almost identical to §2-607(3)(a) of the UCC: "Where a tender has been accepted (a) the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." The Eastern district of Wisconsin has held that UCC §2-607 requires pre-suit notice. Brame v. Gen. Motors LLC, 535 F. Supp. 3d 832, 839 (E.D. Wis. 2021). In Brame, the court citing Paulson in concluding that held that "under Wisconsin law, service of a summons and complaint cannot function as the notice required by UCC 2-607," because "one of the purposes of the notice requirement is to enable the seller to take corrective action and avoid litigation." Id. at 839. The Brame court held that even if the defendant had breached an express warranty, it would have had to dismiss the case for failure to give pre-suit notice. Id. at 841.

And in the Western District, the court came to the same conclusion when considering Wis. Stat. §402.607(3)(a). Blitz v. Monsanto Co., 317 F. Supp. 3d 1042, 1055 n.10 (W.D. Wis. 2018). The Blitz court dismissed a plaintiff's claim that the defendant had violated an express warranty because the plaintiff had not given the defendant notice. Blitz, 317 F. Supp.3d at 1055. The court observed that "a notice exception broad enough to encompass the filing of a complaint undercuts the twin purposes of the notice requirement: to give notice of and opportunity to correct a specific defect and to inform the seller that the

41

purchaser believes it is responsible for remedying the defect." Id. at 1055 n.10.[10]

The allegations in the complaint are ambiguous; the plaintiff alleged that she "provided or will provide notice to defendant, its agents, representatives, retailers, and their employees" and that "Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices." Dkt. No. at 1 at ¶¶119, 120. The argument in her brief, however, is not ambiguous; she says explicitly that she gave the defendant notice by "filing this action in October 2021." Dkt. No. 15 at 16. The summons and complaint did not give the defendant "reasonable" notice so that it could try to correct the alleged defect and avoid suit.

Because the plaintiff failed to comply with Wis. Stat. §402.607(3)(a) by giving pre-suit notice to the defendant about the alleged breach of implied and express warranty, the court will dismiss those claims.

    2. *Magnuson Moss Warranty Act*

The defendant says that it is unclear whether the plaintiff is asserting a claim under the Magnuson Moss Warranty Act (MMWA) because while she named the statute in the heading of the claim, the body of the complaint does not provide any supporting allegations. Dkt. No. 13 at 27-28. The defendant argues that if the plaintiff did intend to bring a claim under the statute, the

---

[10] Although neither of these cases address the applicability of the notice requirement to an implied warranty, the argument for pre-suit notice is even stronger in that circumstance, where there is no written warranty guaranteeing that the defendant was aware of what it had warranted.

court does not have jurisdiction over the claim because the complaint does not satisfy the statute's numerosity requirement, id. at 28 (citing 15 U.S.C. §2310(d)(3)(C)), and because the statute requires a warranty, not just a product description, id. at 28 (citing 15 U.S.C. §2308). The plaintiff does not respond to the numerosity argument; she says only that she alleged an alternative jurisdictional basis under the Class Action Fairness Act of 2005 (CAFA), 28 U.S.C §1332(d)(2). Dkt. No. 15 at 17 (citing Dkt. No. 1 at ¶60). As to the warranty argument, she argues that "Smoked Gouda" is a written affirmation of fact, not just a product description. Id.

a.     Numerosity

Under the MMWA, "[n]o claim shall be cognizable in a suit brought [in federal district court] . . . if the action is brought as a class action, and the number of named plaintiffs is less than one hundred." 15 U.S.C. §2310(d)(3). The number of named plaintiffs in this case is one. If the complaint had alleged *only* a violation of the MMWA, asserted as a class action, the fact that the complaint names fewer than one hundred plaintiffs might be fatal to this court's exercise of jurisdiction.

The plaintiff asserts that she alleged an "alternate" basis for jurisdiction under the Class Action Fairness Act of 2005. Under CAFA, district courts have original jurisdiction "of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000 . . . and is a class action in which—(A) any member of a class of plaintiffs is a citizen of a State different from any defendant . . . .." 28 U.S.C. §1332(d)(2)(A). The plaintiff is correct that she has

alleged that the court has jurisdiction over the case under CAFA. Dkt. No. 1 at ¶60. And the complaint alleges that the plaintiff is from Wisconsin, the defendant is an Ohio corporation and the amount in controversy exceeds $5,000,000. Id. at ¶¶61–63.

The Northern District of Illinois has held that the MMWA's jurisdictional requirement is not in conflict with CAFA. Clark v. Wynn's Extended Care, No. 06 C 2933, 2008 WL 922244, *4-5 (N.D. Ill. Mar. 23, 2007). In Clark, the plaintiff argued that even though he had not met the MMWA's numerosity requirement, the court had jurisdiction over his MMWA claim because CAFA provided an independent jurisdictional basis. Id. at *4. Because there was no controlling authority from Seventh Circuit or the Supreme Court on that issue, the plaintiff cited Chavis v. Fidelity Warranty Services, Inc., 415 F. Supp. 2d 620, 622–24 (D. S.C. 2006)). Id. The Northern District of Illinois found the Chavis court's reasoning persuasive and applied CAFA to the plaintiff's state law claims brought under MMWA. Id. at *5.

The Chavis court concluded that "federal jurisdiction may be appropriate for [MMWA] claims that fail to satisfy the requirements of 15 U.S.C. §2310(d)(1)(B) if a valid alternative federal jurisdictional basis exists." Chavis, 415 F. Supp. 2d at 624-25. Citing the "firmly entrenched" rule that "Congress is presumed to enact legislation with knowledge of the law," the court found that CAFA—signed into law in 2005—"was passed with the clear intention of expanding 'federal court jurisdiction over class actions,'" (citing S. Rep. No. 109-14 at 42 (2005)), that Congress is presumed to have been aware of the

44

MMWA's jurisdictional requirements when it passed CAFA and therefore must have intended to expand federal jurisdiction over class actions. Id. at 626. See also Mercado v. Audi of Am., LLC, No. ED CV18-02388 JAK (SPx), 2020 WL 5413835, *8-9 (C.D. Cal. May 15, 2020 (adopting the reasoning from Chavis); Allen v. Toyota Motor Sales, U.S.A., Inc., 155 F. App'x 480, 482 n.2 (11th Cir. 2005) ("Because we conclude that the district court had diversity jurisdiction, we do not consider whether [jurisdiction under the MMWA] was available."); Wolph v. Acer Am. Corp., No. C 09-01314 JSW, 2009 WL 2969467, *3 (N.D. Cal. Sept. 14, 2009) ("[B]ecause Plaintiffs allege an alternative basis for jurisdiction under CAFA, the Court has jurisdiction to adjudicate Plaintiffs' Magnuson-Moss Act claim.").

The court agrees that the Chavis reasoning is sound and persuasive. And the court notes that there is yet another independent basis for jurisdiction, as stated early in the decision: diversity. The plaintiff and defendant are citizens of different states and the amount in controversy exceeds $75,000.

Because there are other independent bases for the court's jurisdiction, it will not dismiss the MMVA claim for failure to meet the statute's numerosity requirement.

b.      Lack of warranty

The defendant argues that the MMWA requires a "warranty, not just a product description." Dkt. No. 13 at 28 (original emphasis). It also asserts that an MMWA claim "depends on the existence of an underlying viable state-law warranty claim so the two claims can be evaluated together and succeed or fail

45

together." Id. at 29 (quoting Zylstra v. DRV, LLC., 8 F.4th 597, 609 (7th Cir. 2021)).

The defendant cites 15 U.S.C. §2308 in support of its insistence that there must be a warranty, not just a product description, for the plaintiff to assert a claim under the MMVA. It is not clear why—Section 2308 governs disclaimers and modifications to implied warranties. The defendant cites a case from the Eastern District of New York, In re Frito-Lay N. Am., Inc. v. All Nat. Litig., Case No. 12-MD-2413 (RRM) (RLM), 2013 WL 4647512, at *17 (E.D.N.Y. Aug. 29, 2013), which held that the "All Natural" label on the defendant's product did not constitute a warranty.

Strangely, the defendant did *not* cite the MMWA's definitions of a warranty. The MMWA defines a written warranty as any "written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time." 15 U.S.C. §2301(6)(A). It defines an implied warranty as "an implied warranty arising under State law . . . in connection with the sale by a supplier of a consumer product." 15 U.S.C. §2301(7).

The front label's reference to "Smoked Gouda" may relate to the nature of the "material," but it does not affirm or promise that that material is "defect free or will meet a specified level of performance over a specified period of time." It does not meet the statute's definition of a written warranty. And the court

46

has dismissed the plaintiff's implied warranty claim for failure to give reasonable notice under Wisconsin law. The label does not meet the MMWA's definition of "warranty." And, as the defendant *has* argued, the Seventh Circuit has held that "[t]he MMWA depends on the existence of an underlying viable state-law warranty claim, and so the two claims can be evaluated together and succeed or fail together." Zylstra, 8 F.4th at 609. See also Karlinski v. Costco Wholesale Corp., No. 1:21-cv-03813, 2022 WL 2867383, *7 (N.D. Ill. July 21, 2022) ("The MMWA depends on the existence of an underlying viable state-law warranty claim."). The plaintiff does not have any underlying, viable state-law warranty claims.

The court will dismiss the plaintiff's MMWA claim for failure to state a claim.

D.    Unjust Enrichment Claim

The defendant argues that the plaintiff failed to state a claim for unjust enrichment, because the plaintiff's purchase of the product from the defendant created a contractual relationship and the equitable doctrine of unjust enrichment applies only in the absence of a contract. Dkt. No. 13 at 29-30. It asserts that the purchase price paid to the defendant for the product "was not an inequitable benefit or an injustice that requires an equitable remedy." Id. at 30

The plaintiff responds that Fed. R. Civ. P. 8(e)(2) permits a plaintiff to plead alternative theories of relief, even if those theories are inconsistent. Dkt.

47

No. 15 at 19 (citing <u>Diamond Center v. Leslie's Jewelry Mfg. Corp.</u>, 562 F. Supp. 2d 1009, 1017 (W.D. Wis. 2008)).

In Wisconsin, a claim for unjust enrichment must allege three elements: "(1) the plaintiff conferred a benefit upon the defendant; (2) the defendant had an appreciation or knowledge of the benefit; and (3) the defendant accepted or retained the benefit under circumstances making it 'inequitable for the defendant to retain the benefit without payment of its value.'" <u>Kelly v. Cole</u>, 379 Wis. 2d 368 at *3, ¶24 (Wis. Ct. App. 2017) (quoting <u>S & M Rotogravure Serv., Inc. v. Baer</u>, 77 Wis. 2d 454, 460 (Wis. 1977)). "[U]njust enrichment is an equitable doctrine that is 'grounded on the moral principle that one who has received a benefit has a duty to make restitution where retaining such a benefit would be unjust.'" <u>Smith v. RecordQuest, LLC</u>, 989 F.3d 513, 520 (7th Cir. 2021) (quoting <u>Watts v. Watts</u>, 137 Wis. 2d 506 (Wis. 1987)).

The plaintiff alleges that the defendant "obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members . . .." Dkt. No. 1 at ¶132. The defendant is correct that the plaintiff cannot "resort to a remedy in equity (unjust enrichment) when she has a remedy at law." <u>RecordQuest</u>, 989 F.3d at 520. The plaintiff cannot bring her unjust enrichment claim if it is derivative of and predicated on a statutory claim available to the plaintiff. <u>Id.</u> The court has concluded that the plaintiff has statutory claims under Wis. Stat. §100.20 (through ATCP 90.02(3) and 90.10(1)) for the injuries she alleges. She has unjustly enriched the defendant only if the defendant violated Wis. Stat.

48

§100.20. "Allowing a double recovery for these intertwined claims may itself be inequitable." Id.

The plaintiff's argument that Rule 8 allows a plaintiff to plead alternative claims misses the mark. Equitable remedies are available *only* if there are not contractual or statutory remedies available. Because the plaintiff has such remedies, she *cannot* bring a claim for unjust enrichment. She has not met the prerequisite for an unjust enrichment claim—showing that she does not have a remedy at law.

The court will grant the motion to dismiss the unjust enrichment claim.

E.    Request for Injunctive Relief

Finally, the defendant argues that the plaintiff does not have standing to seek injunctive relief because she has not alleged a threat of future injury. Dkt. No. 13 at 24. It argues that the plaintiff "cannot credibly and plausibly allege that she is likely to suffer future harm from [the defendant's] alleged misrepresentations." Id.

The plaintiff asserts that because the defendant continues to represent the product as "Smoked Gouda," and because she has asserted that she intends to and will buy the product again once she is assured that that representation is "consistent with its composition," she has alleged an imminent threat of future harm. Dkt. No. 15 at 19 (citing Dkt. No. 1 at ¶85).

To have standing for injunctive relief, the plaintiff must "demonstrate that [s]he faces a 'real and immediate' threat of future injury; 'a past injury alone is insufficient to establish standing for the purposes of prospective

49

relief.'" Carello v. Aurora Policemen Credit Union, 930 F.3d 830, 833 (7th Cir. 2019) (quoting Simic v. City of Chi., 851 F.3d 734, 738 (7th Cir. 2017)).

The complaint asserts that the plaintiff intends to and will buy the cheese again "when she can do so with the assurance that Product's representations are consistent with its composition." Dkt. No. 1 at ¶85. Implicit in this assertion is that she will *not* purchase the cheese until she is assured that it gets its smoky flavor from the smoking process and not from smoke flavoring. She is not at risk of injury unless she voluntarily purchases the cheese before assuring herself of that fact. See Camasta v. Jos. A. Bank Clothiers, Inc., 761 F.3d 732, 741 (7th Cir. 2014) ("Since [the plaintiff] is now aware of [the defendant's] sales practices, he is not likely to be harmed by the practices in the future.").

The court will dismiss the plaintiff's request for injunctive relief.

## IV. Conclusion

The court **GRANTS IN PART AND DENIES IN PART** the defendant's motion to dismiss. Dkt. No. 12.

The court **DISMISSES** the following claims:

Wis. Stat. §100.20 based on ATCP 90.02(1) (Dkt. No. 1, ¶101);

Breach of express warranty, Breach of implied warranty of merchantability and Magnuson Moss Warranty Act, 15 U.S.C. §§2301, *et seq.* (Dkt. No. 1, ¶¶116-122);

Common law negligent misrepresentation (Dkt. No. 1, ¶¶123-127);

Common law fraud (Dkt. No. 1, ¶¶128-131); and

50

Unjust enrichment (Dkt. No. 1, ¶132).

The plaintiff **MAY PROCEED** on the following claims:

Wis. Stat. §100.20 based on ATCP 90.02(3) (Dkt. No. 1, ¶¶95-100, 102, 104-111);

Wis. Stat. §100.20 based on ATCP 90.10(1) (Dkt. No. 1, ¶¶95-100, 103, 104-111); and

State Consumer Fraud Acts on behalf of the multi-state class (Dkt. No. 1, ¶¶112-115).

The plaintiff may file class certification motions, both as to the Wisconsin and the multi-state classes, when the court sets a date for doing so.

The court **DISMISSES** the plaintiff's prayer for injunctive relief.

The court **ORDERS** that the defendant must answer the remaining claims in the complaint as required under Fed. R. Civ. P. 12(a)(4).

Dated in Milwaukee, Wisconsin this 3rd day of October, 2022.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**